IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD P. SEMULKA,** | : | **No. 1:08-CV-1290** |
| **Petitioner** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **BUREAU OF PRISONS and WARDEN JERRY MARTINEZ,** | : | |
| **Respondents** | : | |

# M E M O R A N D U M

Petitioner Edward P. Semulka seeks a writ of habeas corpus under 28 U.S.C. § 2241 because, he asserts, he has been wrongfully denied release to a halfway house from his current place of confinement, Federal Correctional Institution Allenwood, Low-Security ("Allenwood-Low"). The Warden[1] of Allenwood-Low has not released Semulka because Semulka has three outstanding warrants pending against him. According to the Warden's interpretation of Bureau of Prisons ("BOP") Program Statement 7310.04 ("P.S. 7310.04"), Semulka must resolve the warrants before he may be released to a halfway house. For the reasons that follow, the petition will be denied.

---

[1] The only proper respondent to a habeas petition is the petitioner's immediate custodian—here, the Warden of Allenwood-Low, Jerry Martinez. *Padilla v. Rumsfeld*, 542 U.S. 426, 442, 446-47 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 495 (1973); *accord Yi v. Maugans*, 24 F.3d 500, 507 (1994) (Petition must be addressed to the warden because "it is the warden that has day-to-day control over the prisoner and who can produce the actual body" of the person detained.). Accordingly, the Bureau of Prisons will be dismissed from this action.

**I.**      <u>**Background**</u>

      **A.**   <u>**Facts**</u>

      The facts, drawn from the habeas petition and exhibits to Respondent's response, are as follows.  Semulka was convicted of five counts of wire fraud in the Western District of Pennsylvania.  He was sentenced to twenty-four months in prison with a three year term of supervised release.  At the time of his sentencing, his Pre-Sentence Investigation Report showed at least three pending charges against him. Trial against him was pending in the Court of Common Pleas for Washington County, Pennsylvania, on two counts of writing bad checks.  A warrant for the same crime was pending before the Magisterial District Court in Scranton, Pennsylvania.

      Since April 17, 2007, Semulka has been designated to Allenwood-Low. In July 2007, Semulka and J.J. Reitz, his case manager, discussed the possibility of Semulka being released to a halfway house, or community corrections center ("CCC") before his ultimate release date.  Reitz told Semulka that he could resolve the pending warrants against him from the halfway house.  Semulka understood that he was to be released to the halfway house on June 3, 2008.

      But on May 29, 2008, Semulka's new case manager, Ms. Bennage, informed him that he would not be permitted to go to the halfway house on June 3. She told him that the three open warrants precluded his release.  Thereafter, Semulka filed an inmate request to a staff member, asking Warden Martinez to permit him to be released on June 3.  The Warden denied Semulka's request on June 9.  The Warden noted that Reitz had been mistaken in informing Semulka that he would be permitted to resolve his open warrants from the halfway house.  In fact, P.S. 7310.04 ¶ (10)(f) provides that inmates "with unresolved pending charges, or detainers,

which will likely lead to arrest, conviction, or confinement" "shall not ordinarily participate in CCC programs."  The Warden stated that if Semulka was able to resolve the outstanding charges, and he had enough time remaining on his sentence, he would be considered for release to a halfway house.  Semulka is scheduled to be released from federal custody on November 28, 2008.

Semulka also alleges in passing that he was retaliated against for having filed grievances with the prison and that he was denied access to necessary medication.  (*See generally* Doc. 1 Ex. B.)

The court has no information as to whether any of Semulka's warrants have been resolved during the pendency of his habeas petition.  This opinion will proceed as if Semulka has at least one warrant outstanding.  The BOP online Inmate Locator shows that he remains confined at Allenwood-Low.

### B.    Procedural History

Semulka filed his petition for writ of habeas corpus on July 7, 2008. Respondents filed their response to the petition on July 15, 2008.  Semulka filed his reply on July 29, 2008.  Accordingly, the petition is ripe for disposition.

## II.    Habeas Remedy

In *Woodall v. Federal Bureau of Prisons*, the Third Circuit Court of Appeals held that a prisoner properly used a petition under 28 U.S.C. § 2241 to challenge the execution of his sentence in a situation similar to Semulka's.  432 F.3d 235, 241-44 (3d Cir. 2005).  The execution of a sentence may involve "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison

conditions." *Id.* at 242 (quoting *Jiminian v. Nash*, 245 F.3d 144, 147 (2d Cir. 2001)).  Most pertinent to this case, an issue of denied transfer to a community corrections center is properly raised on a petition under § 2241.  *Id.* at 243-44.

A proceeding under 28 U.S.C. § 2241 is not, however, the correct vehicle by which to raise claims of First Amendment retaliation and denial of adequate medical care.  To the extent that Semulka attempts to do so, his petition will be denied.

III.        **Discussion**

A.      **Administrative Exhaustion**

In the ordinary course, a federal prisoner must exhaust administrative remedies before petitioning the district court under § 2241.  *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Administrative exhaustion is not a jurisdictional requirement, but it promotes the following goals:

> (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors.

*United States ex rel. Marrero v. Warden*, 483 F.2d 656, 659 (3d Cir. 1973), *rev'd on other grounds by Warden v. Marrero*, 417 U.S. 653 (1974).  If these basic goals are not served by requiring administrative exhaustion, the court may proceed to evaluate the merits of an unexhausted claim.  *Id.* ("Whether to require exhaustion is discretionary.").  Further, exhaustion is not required when a petitioner demonstrates that attempting to exhaust would be futile.  *Id.*

BOP records indicate that Semulka did not exhaust the administrative remedy process.  He submitted an inmate request to Warden Martinez that the Warden "intervene and allow [him] to release to a half-way house as scheduled." (Doc. 1 Ex. A.)  On June 9, 2008, Warden Martinez responded, denying his request. (*Id.*)  Semulka attempted to file an administrative grievance on June 26, 2008, regarding his continued confinement at Allenwood-Low instead of a CCC.  (Doc. 7 Ex. A. ¶ 8; *id.* Att. 3.)  This grievance was rejected because he failed to submit evidence of an attempt at informal resolution of the problem and because he stated more than one issue in the grievance—he also complained of being denied medication.  Semulka neither resubmitted the request as a single issue, nor opted to bypass the institutional level to file his grievance with the regional office in accordance with federal regulations.  BOP records indicate that he was told that he could appeal one of the two issues—CCC placement or denial of medication—on a form BP-9.  On June 30, 2008, Semulka requested "30 BP-9 forms."  (Doc. 7 Ex. A. ¶ 8; *id.* Att. 3.)  There is no evidence that Semulka was given a BP-9, and he avers in his habeas petition that he was refused a BP-9.  Further, Semulka alleges that he was told by an E.J. Netzband, a prison employee, that any form he submitted would be rejected.

Because of the time-sensitive nature of the issue raised in his habeas petition and because he may have been precluded from exhausting his administrative remedies by prison staff, this court will evaluate Semulka's petition on the merits.

**B.     Release to a CCC**

The statutory scheme governing any prisoner's place of confinement begins with 18 U.S.C. § 3621(b), which provides that:

5

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence–
(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

A separate statute, 18 U.S.C. § 3624(c), addresses prerelease custody in particular.  It commands the Director of the Bureau of Prisons to ensure,

to the extent practicable, . . . that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Promulgated under this statutory authority is BOP Program Statement 7310.04.  The Program Statement addresses "Community Corrections Center (CCC) Utilization and Transfer Procedure."  It is meant to "provide guidelines to staff regarding the effective use of [CCCs,]" including "placement criteria," timing of placement, and circumstances under which an inmate may refuse CCC placement. P.S. 7310.04 ¶ 1.  Paragraph 10 provides limitations on an inmate's eligibility for a CCC referral.  Inmates "with unresolved pending charges, or detainers, which will

6

likely lead to arrest, conviction, or confinement" "shall not ordinarily participate in CCC programs." *Id.* ¶ 10(f).

Program Statement 7310.04 constitutes the BOP's construction of the two statutes set forth above.  In reviewing the Program Statement for validity, the court asks 1) whether Congress has directly spoken to the precise legal question at issue and 2) if Congress has not directly addressed the precise question at issue, whether the BOP's decision on how to fill the statutory gap "is reasonable in light of the legislature's revealed design." *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)); *accord Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

The Program Statement is valid under this test.  Congress did not legislate on the precise question of whether inmates with outstanding warrants should be allowed to participate in a CCC program.  The BOP's decision on where to place such inmates is reasonable in light of the statutory design because it follows the instructions set forth by Congress.  The BOP is required to consider the "history and characteristics of the prisoner" in determining his placement.  18 U.S.C. § 3621(b)(3).  An inmate's outstanding warrants are pertinent facts of the inmate's history.  *See Kurt v. Daniels*, Civil No. 06-726, 2007 WL 593575, at *5 (D. Or. Feb. 14, 2007).  Outstanding warrants may also inform an inmates's future behavior, once released from prison.  The possibility of re-arrest and re-confinement may create a flight risk.  Further, the Program Statement does not categorically ban inmates with outstanding warrants from participating in a CCC program; it states that they shall not "ordinarily" be placed at a CCC.  It is possible that an inmate with an

outstanding warrant might, in light of other factors, be permitted release to a CCC. The criteria set forth in P.S. 7310.04 is in keeping with the individualized assessment required by 18 U.S.C. § 3621(b) to determine a prisoner's placement. *See Woodall*, 432 F.3d at 247.

This evaluation is also in keeping with the grant of discretionary authority in 18 U.S.C. § 3624(c) regarding pre-release custody. "[T]o the extent practicable," the BOP shall ensure "that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." *Id.* Those conditions may include, but do not necessarily include, placement at a CCC. *Id.*; *Woodall*, 432 F.3d at 251. It is not unreasonable for the BOP to determine that inmates with outstanding warrants may ordinarily be prepared for reentry to the community in a facility other than a CCC. Accordingly, P.S. 7310.04 is a valid interpretation of the statutory authority granted by Congress to the BOP. *Accord Mumphrey v. Sanders*, No. 2:05CV00169, 2006 WL 83410, at *3 (E.D. Ark. Jan. 9, 2006); *James v. DeRosa*, No. Civ.A. 04-3808, 2005 WL 2247951, at *4 (D.N.J. Sept. 14, 2005); *see also Williams v. Nash*, No. Civ. 05-4395, 2006 WL 141906, at *4 (D.N.J. Jan. 19, 2006).

Warden Martinez's decision to adhere to the Program Statement in Semulka's case was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706(2)(A). The Warden applied P.S. 7310.04 to the facts of Semulka's situation and determined that he should not be released. Further, the Warden noted that if Semulka is able to resolve the charges

and he has sufficient time remaining on his sentence, Semulka would be reconsidered for CCC placement.  (Doc. 1 Ex. A.)

Accordingly, Semulka's petition for a writ of habeas corpus will be denied.  The court, however, echoes Warden Martinez's sentiments: it is most unfortunate that Semulka received inaccurate information from his prison case manager.  (*See id.*)  This inaccurate information has worked to Semulka's substantial detriment.  His anger and frustration is certainly understandable.  Although this court cannot so order, it appears that the interests of justice require that the staff currently employed at Allenwood-Low work to rectify their former colleague's mistake by facilitating Semulka's process of resolving his outstanding warrants.

IV.      **Conclusion**

The petition for writ of habeas corpus, under 28 U.S.C. § 2241, filed by Edward P. Semulka will be denied and this case dismissed.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  July 31, 2008.

9

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD P. SEMULKA,                  :        No. 1:08-CV-1290
                                    :
            Petitioner              :        JUDGE SYLVIA H. RAMBO
                                    :
       v.                           :
                                    :
BUREAU OF PRISONS and               :
WARDEN JERRY MARTINEZ,              :
                                    :
            Respondents             :

## O R D E R

In accordance with the foregoing memorandum of law, **IT IS**

**HEREBY ORDERED THAT:**

    1) The Bureau of Prisons is **DISMISSED** from this action.

    2) The petition for writ of habeas corpus filed by Edward P. Semulka

(Doc. 1) is **DENIED**.

    The Clerk of court shall close this case.


                      s/Sylvia H. Rambo
                      SYLVIA H. RAMBO
                      United States District Judge


Dated:  July 31, 2008.